AO 106 (Rev. 5/85) Affidavit for Search Warrant

# United States District Court

## MIDDLE DISTRICT OF ALABAMA

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

The residences and all out buildings at the premises, and vehicles located at 2288 Kent Road, Tallassee, Alabama 36078 (further described in Attachment A)

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

CASE NUMBER: 2:17mj 183-GMB

I, _____ Jerry Boykins _____ being duly sworn depose and say:

I am a(n) _____ Postal Inspector with the U.S. Postal Service _____ and have reason to believe
                                    Official Title
that ☐ on the person of or ☒ on the premises known as (name, description and/or location)

The residences and all out buildings at the premises, and vehicles located at 2288 Kent Road, Tallassee, Alabama 36078 (further described in Attachment A)

in the _____ Middle _____ District of _____ Alabama _____
there is now concealed a certain person or property, namely (describe the person or property)
See Attachment B

which is (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)

contraband, the fruits of a crime or thing otherwise criminally possessed,

in violation of Title _____ 18 _____ United States Code, Section(s) _____ 1028A, 1029, 1341, 1343 and 1344 .
The facts to support the issuance of a Search Warrant are as follows:

See attached affidavit incorporated herein by reference and made part of this application.

Continued on the attached sheet and made a part hereof.    ☒ Yes    ☐ No

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence

August 7, 2017                                       at    MONTGOMERY, ALABAMA
Date                                                        City and State

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE                        _____
Name and Title of Judicial Officer                    Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

The undersigned, being duly sworn on oath, deposes and states the following:

1. I, Jerry Boykins, (Affiant) have been a United States Postal Inspector for over 4 years. I am currently assigned to the U.S. Postal Inspection Service Office in Montgomery, Alabama. Additionally, I have a total of 21 years of law enforcement experience, including a previous tenure as a police officer with the Montgomery Police Department. I am currently assigned to the Montgomery Domicile of the Houston, Texas Division of the U.S. Postal Inspection Service. As a Postal Inspector, I enforce federal laws relating to postal offenses. I investigate, among other things, incidents where the United States Mail is used for the purpose of transporting non-mailable matter, burglaries and robberies of post offices, credit card fraud, obstruction of mail, mail theft, identity theft and mail fraud.

2. This affidavit is made in support of an application for a search warrant of the residence, automobiles, curtilage, structures, carport/garage, mail boxes, and any and all computers, cell phones, and or digital media located at **2288 Kent Road, Tallassee, Alabama 36078** for evidence of violations of Title 18 United States Code, Section 1028A (Aggravated Identity Theft); Title 18, United States Code, Section 1029 (Fraud and Related Activity in Connection with Access Devices); Title 18 United States Code, Section 1341 (Mail Fraud); Title 18, United States Code, Section 1343, (Wire Fraud); and Title 18, United States Code, Section 1344 (Bank Fraud). This case is being investigated by the U.S. Postal Inspection Service (USPIS).

3. The following information has been personally obtained by me or has been provided to me by other members of law enforcement, fraud investigators, and various victims. I have not included every fact known to me about this case; rather, I have limited this Affidavit to those facts relevant to the issuance of a Search Warrant.

## English's scheme to defraud-stroller sales

4. This affidavit will show that from approximately April 2013 to the present, Tanya English, aka "Tanya Roberts" (English), orchestrated a well-organized scheme using Craigslist, eBay, PayPal, and numerous banks accounts. English operated her scheme out her residence located at 2288 Kent Road, Tallassee, Alabama 36078.

English's scheme involved her posting ads on Craigslist and eBay listing high-end baby strollers such as Uppababy Vista and Bugaboo Donkey for sale. Many buyers were attracted to English's listings because the stroller price was affordable. Purchased as a new product, these items range in price from $900 to $1,500 each. English listed pictures of these strollers with a for sale price range from $599 to $900. Occasionally, English listed a stroller and required the buyer(s) to bid on the purchase price. Unknown to the potential buyer(s), English did not have a stroller for sale.

5. In her listing, English included her contact information, and a brief description of the condition of the stroller. English communicated with the buyer(s) by text in order to answer questions or provide information about the strollers. Once the terms and selling price were agreed on, English that requested the buyer(s) purchase the stroller by using their PayPal account's "Family and Friends option." English knew that using this option required her to pay minimal fees, if any. When the buyer(s) completed payment, as part of the scheme English would sometimes give buyer(s) a tracking number along with an expected date of arrival for their purported purchase of a stroller.

6. Once the buyer(s) deposited the money into English's PayPal account, English discontinued all communication with the buyer. The deposited funds were routed by English to a bank she chose. During the course of this investigation, agents identified five different banks that English used. She obtained a large number of prepaid money cards through these banks and it appears the funds sent in by the unsuspecting buyers were uploaded to these prepaid cards. English used the prepaid cards to purchase various personal items and to pay personal bills. The buyers never received a stroller or an explanation from English.

7. As part of this investigation, Affiant spoke with Pay Pal Investigator Erick Dickey (Dickey). Dickey explained that a subject identified as Tanya English was conducting activity that seemed suspicious in nature. Dickey indicated that English had created a large number of false or stolen ID accounts. In addition, she appeared to be selling high-end strollers on Craigslist and eBay. He stated that it appeared she was using money from the fraudulent sales to make personal purchases of various goods and had them shipped to her residence address at 2288 Kent Road, Tallassee, Alabama. The now victim buyers of the high-end strollers filed claims and chargebacks with PayPal after

2

never receiving the stroller. PayPal provided spreadsheets which show victim contact information, victim purchases, English's PayPal transaction history, English's ACH withdrawals, purchases made by English via Craigslist, personal items purchased by and sent to English's residence in Tallassee, Alabama, recorded conversations with English using stolen identities and disputing an account, and IP address information.

**English's use of stolen identities**

8. The investigation has shown that at various times English used stolen identities to perpetuate her criminal activity. It is unknown at this point how English obtained the stolen identities. However, during the commission of this scheme English used the stolen identities to open numerous PayPal accounts. It appears that the PayPal accounts were used by English to purchase personal items. The victims of identity theft contacted PayPal's collections department to dispute the accounts. PayPal researched the information and was able to link the stolen identities to English. From 2013 to 2016, forty-one (41) different identities that were confirmed by PayPal as being stolen and used by English to carry out her fraudulent activity. These identities were stolen from real individuals in Alabama, Florida, Georgia, Maryland, Michigan, Minnesota, New Mexico, North Carolina, Ohio, Pennsylvania, South Carolina, Tennessee, Texas, Virginia, and Washington.

**Prepaid credit cards obtained and used by English.**

9. The chart below is a timeline and breakdown of identified banks that were used by English. These accounts were linked to English through personal identifying information along with address information that she provided to the banks. As reflected in the chart, English received funds from victim buyers through deposits into PayPal accounts she controlled. English would upload these funds via ACH to prepaid credit/debit cards. English used these prepaid cards to purchase items for her own personal benefit.

| Time Period Deposits Received via PayPal. | PayPal Deposit Amount | Bank Issuing Prepaid Card | Number of Prepaid Cards Issued |
|---|---|---|---|
| 2/18/14 thru 3/03/14 | $3,798.00 | CNB & Trust | 15 |
| 6/08/13 thru 7/08/14 | $32,770.00 | Meta Bank | 73 |
| 10/03/14 thru 10/07/14 | $18.00 | The Bancorp Bank | 195 |

| 7/28/14 thru 4/15/15 | $29,346.00 | Meta Bank | 55 |
| --- | --- | --- | --- |
| 5/06/15 thru 9/03/2015 | $1,550.28 | Sunrise Bank | 18 |
| 7/20/15 thru 4/05/16 | $25,729.21 | Regions Bank | 54 |
| 4/11/16 thru 7/08/16 | $24,012.46 | Regions Bank | 57 |
| 7/25/16 thru 8/26/16 | $7,161.46 | Regions Bank | 10 |

**Total:** 477 Prepaid cards / Loss Amount: **$124,385.41.**

10. According to bank records, English received hundreds of third party ACH payments from various individual which were deposited into her PayPal account. Following the deposit of the ACH credits, a large portion of the funds were withdrawn via ATM cash withdrawals or via PayPal debits. A large portion of the funds were uploaded to prepaid cards or general purpose reloadable cards (GPR). Records show that some of the funds were used to pay bills such as credit card payments, Direct TV bill, Alabama Power, and more. Once the prepaid cards were depleted, they were closed and a new card was opened. Each prepaid or GPR card was opened for one to three weeks and then closed.

**English's Internet and computer/electronic device use**

11. On or about June 29, 2017, records were received from CenturyLink bearing Internet Protocol (IP) address information that linked English to the investigation. CenturyLink records revealed that English currently has service with the business. The records show that she established service on September 24, 2013, with a billing address of 2288 Kent Road, Tallassee, Alabama 36078. The records list a phone number on file for English as (334) 283-2246. According to records, this is an active landline phone number which is not published. CenturyLink records also show that English has a Dynamic subscriber IP address. Dynamic IP's are temporary numeric identification assigned to an IP network. When computers and devices in the network are turned on for the first time, they are assigned an IP address by a server. Internet Service Providers typically assign dynamic addresses to the Internet connections of their residential and small business customers, which are less expensive than static addresses. That means the IP address to the outside world in a cable or DSL modem change periodically.

12. Records provided by PayPal and CenturyLink show that English used her internet and a computer(s), tablet, or smartphone to log onto PayPal's website. In addition, records show that she logged on to PayPal's website using her IP address at

4

2288 Kent Road, Tallassee, Alabama as recently as June 6, 2017. Therefore, the computer(s), tablet(s), cellphone(s) or smartphone(s) used to conduct this fraudulent activity are likely at 2288 Kent Road, Tallassee, AL 36078, along with other instrumentalities, evidence, and fruits related to those offenses.

**Search and seizure**

13. Based on information gathered in this investigation, this application seeks permission to search English's residence as described in Attachment A, and to seize any records and items purchased relating to English's scheme found on the premises, in whatever form they may be found, as described in Attachments B and C to this affidavit.

14. Based on my training and experience, individuals involved in fraud schemes are likely to keep proceeds of the scheme, property derived from the proceeds, records and other evidence about the proceeds and transaction with the proceeds in their residence and vehicles.

15. Affiant further submits that if a computer or other electronic device capable of accessing this internet as described in Attachments B and C is found at English's residence as described in Attachment A, that there is probable cause to believe records relating to the scheme will be stored in that computer or electronic medium, for at least the following reasons:

   a. As previously described, Affiant is aware that a computer(s), tablet(s), cellphone(s), or smartphone(s) was used to create ads on Craigslist and eBay along online purchases made, and there is probable cause to believe that such computer(s), tablet(s), cellphone(s) or smartphone(s) are at English's residence and will contain evidence regarding those online activities.

   b. According to PayPal, when an individual uses a computer, tablet, cellphone, or smartphone to create an online ad, it will generally serve both as an instrumentality for committing the crime, and also as a storage device for evidence of the crime. The computer, tablet, cellphone, or smartphone, and any external electronic storage device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer, tablet, cellphone, smartphone,

5

external storage device is also likely to be a storage device for evidence of crime. A computer, tablet, cellphone or smartphone used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

c. Based on discussions with PayPal, Affiant has learned that files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using readily available forensics tools. This is so because when a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data.

d. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space--that is, in space on the hard drive that is not currently being used by an active file--for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

e. Similarly, files that have been viewed via the Internet are typically automatically downloaded into a temporary Internet directory or "cache." The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

16. Based upon the facts set forth in this affidavit, computers, computer hardware, tablet(s), smartphones, software, related documentation, passwords, data security devices and data were integral tools of these crimes and constitute the means of committing a crime as they are instrumentalities and evidence of the violations designated. Rule 41 of the Federal Rules of Criminal Procedure authorizes the government to seize and retain evidence and instrumentalities of a crime for a reasonable time, and to examine, analyze,

and test them, and Rule 41(e)(2)(B) specifically directs that warrants authorizing the seizure of or on-site copying of electronic storage media or electronically stored information.

17. Based on my training and experience, and vital information that I've learned about information technology, there are several reasons why computers, computer hardware, related input and output peripheral devices, cellular telephones, smart phones, PDA's, software, documentation, external electronic storage device, and data security devices (including passwords) often must be seized to permit a subsequent, more thorough search and analysis by qualified computer experts in a laboratory or other controlled environment. In some cases, it is possible for agents and analysts to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide files and directories, encode communications to avoid using key words, attempt to delete files to evade detection, or take other steps designed to frustrate law enforcement searches for information. These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning areas of the disk not allocated to listed files, or peruse every file briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, law enforcement intends to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment B.

18. Therefore, it will be necessary to seize the computer(s), tablet(s), cellphone(s), or smartphones, or computer hardware that are believed to contain some or all of the evidence described in the warrant, and to conduct an off-site search of the hardware for the evidence described, if, upon arriving at the scene, the agents executing the search conclude that it would be impractical to search the device's hardware on-site for this evidence. If such additional off-site extended analysis is required, the undersigned will make a separate application with this court for a search warrant to search these seized items.

19. In addition to items stored on computers, computer hardware, and other such electronic devices, based on my training and experience and the facts set forth in this affidavit, it is my understanding that offenders of various fraud violations frequently keep documentation of their fraudulent activities. This crime sometimes involves printers, fax machines, paper, and any other associated computer equipment.

20. Based on the investigation, it is my understanding there is a high likelihood that assorted mail items, prepaid card information, notes, documents, letters, correspondence, charge cards, merchandise, receipts, billing statements, cash and other classes of mail matter will be found in English's residence located at 2288 Kent Road, Tallassee, Alabama 36078. It is also my understanding that it is highly likely that items purchased with the fraudulent prepaid cards will be in the residence. Based on my experience, it is normally a possibility to trace an item back to a purchase location by obtaining serial numbers and other identifying items. It is also a normal occurrence that individuals who purchase large ticket items, like a plasma television, would keep records of the purchase, even it were fraudulent, in their home and/or their vehicles.

21. Also, based on my experience, I have found that offenders of these types of violations often do not realize the incriminating nature of some items they purchase or maintain. Often offenders attempt to dispose of some items they feel is incriminating by shredding documents, throwing items away at locations other than there own, as well as other methods. Offenders often do not realize the evidentiary value of their own bank and phone records, manuals and documents of purchases of large items, warranty information of merchandise, hotel and travel records, gambling receipts and records as well as other items. Additionally, it is rare that all the names of victims are known at the time of the execution of search warrants and often other victims are identified during the search. These items are normally maintained in the offenders' residence and are normally maintained for a long period of time.

**Conclusion**

22. Based on the foregoing, Affiant submits that probable cause exists to believe that instrumentalities, fruits, and evidence of violations of Title 18, United States Code, Sections 1028A, 1029, 1341, 1343, and 1344, are presently located at the premises 2288

Kent Road, Tallassee, Alabama 36078. Therefore, I respectfully request that this court the issue a search warrant for the residence, automobiles, curtilage, and any and all computers, tablet(s), cell phones, smartphones, computer hardware and digital media located at 2288 Kent Road, Tallassee, Alabama 36078 for instrumentalities, fruits, and evidence of crime as listed in Attachments B and further defined in Attachment C and to seize those items. Additionally, permission is sought to seize any computer hardware, computer software, tablet(s), cellphones and smart phones, external electronic storage devices, and computer-related documentation located at the premises described in Attachment A. A Computer Investigative Specialist will be used to initially conduct, to the extent necessary and possible, an on-site preview, and subsequently, and with separate authorization by the court to conduct an off-site, thorough forensic analysis, by using whatever data analysis techniques may be necessary to seize the evidence, fruits, and instrumentalities listed in Attachment B and further defined in Attachment C.

Jerry Boykins
Postal Inspector

Sworn to and subscribed before me this 7th day of August, 2017, at Montgomery, AL.

Gray M. Borden
United States Magistrate Judge

9

# ATTACHMENT A – PLACE TO BE SEARCHED

The place to be searches is 2288 Kent Road, Tallassee, Alabama 36078, including any abutting yard and any structures, garage/carport, on the property, curtilage, automobiles, mail boxes, and any and all computers, cell phones, and or digital media located at 2288 Kent Road, Tallassee, Alabama. The residence is a home with beige siding and a brick chimney. A photograph of the residence is attached below.



# ATTACHMENT B – ITEMS TO BE SEIZED

The items to be seized constitute fruits, instrumentalities, and evidence of crimes, for the period of approximately 2013 through the present, including, to wit: Title 18, United States Code, Section 1028A, aggravated identity theft; Title 18, United States Code, Section 1029, fraud with an access device; Title 18, United States Code, Section 1341, mail fraud and related activity in connection with the U.S. mail; Title 18, United States Code, Section 1343, fraud by wire, radio, or television; and Title 18, United States Code, Section 1344, bank fraud. Specifically, the items to be seized are:

1. Computers, computer hardware, computer software, computer passwords and data security devices, computer related documentation, cameras (including digital and video, as well as DVR and video surveillance equipment), tablets, "Smart" telephones, cellular phones and other mobile devices, and external electronic storage devices, used as an instrumentality or containing evidence of such offenses, including:

    a. Evidence of identity, including who used or owned the computer, such as user accounts, logs, registry entries, Internet usage records, usernames, logins, passwords, e-mail addresses and online identities, billing, account, and subscriber records, chat room logs, chat records, membership in online groups, clubs or services, connections to online or remote computer storage, and electronic files;
    b. Evidence of on-line statements, solicitation, persuasion, or inducement, such as merchant email systems, chat rooms, and internet websites, electronic mail, diaries, address books, names, and lists of names and addresses of individuals contacted;
    c. Evidence of knowledge and intent, such as Internet activity, caches, browser history, and cookies, bookmarked or favorite web pages, search terms entered into Internet search engines, and user typed web addresses; and
    d. Evidence of online ads posted on Craigslist and other such social platforms relating to sale of items by Tanya English, a/k/a Tanya Roberts.

2. Books, records, documents, bills, receipts, data, images, videos or information relating to such offenses, including, but not limited to, any records or documents or other evidence regarding

    i. United States Postal Service, United Parcel Service, DHL Express, and FedEx envelopes or labels;
    ii. Identity information (including but not limited to names, social security numbers, and dates of birth);
    iii. Financial or other transactions involving fraudulently obtained funds, including any information regarding currency, PayPal transactions, Prepaid

1

money cards, money orders, debit cards, stored value cards, or other financial instruments relating to illicit proceeds, including the use or spending of such proceeds (including but not limited to the purchase of online items, credit card payments, Direct TV bill, Alabama Power, and other utility bills); and
   iv. Bank and phone records, manuals and documents of purchases of large items, warranty information of merchandise, hotel and travel records, gambling receipts.

3. Any purchased items and receipts for these items that correspond with the list of incoming personal items provided by PayPal that was ordered by English.

4. Any prepaid cards, debit cards, assorted U.S. currency, or other proceeds of the offenses.

5. Assorted mail items, mail labels, notes, documents, letters, correspondence, charge cards, merchandise, receipts, billing statements, cash and other classes of mail matter.

6. Printers, fax machines, paper, and any other associated computer equipment.

# ATTACHMENT C – DEFINITIONS

The following definitions apply to this Affidavit and Attachments to this Affidavit:

a. "Computer," means "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" in accordance with Title 18, United States Code, Section 1030(e)(1).

b. "Computer hardware" means all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, self-contained laptop or notebook computers, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, keys and locks).

c. "Computer passwords and data security devices" means information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

d. "Computer software" means digital information which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs, including but not limited to P2P software.

e. "Internet Protocol address" or "IP address" means a unique number used by a computer to access the Internet. IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP

1

assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

f. "Online Chat Room" is defined as the real time visual interface which displays messages and responses of participants who are using online chat. Chat rooms are usually devoted to specific topics such as US politics; however, there are a number of general chat rooms which are devoted to any issue the participants wish to bring up. Participants usually communicate by typing their contributions into a simple text box line by line. The primary use of a chat room is to share information via text with a group of other users. New technology has enabled the use of file sharing and webcams to be included in some programs and almost all Internet chat rooms or messaging services allow users to display and/or send pictures.